# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| EDWARD CHARLES NICHOLSON | * | CIVIL ACTION NO. 08-0110 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| BOBBIE WISE | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. # 47] filed by defendant, Bobbie Wise. The motion is opposed. [doc. # 47]. For reasons set forth below, it is recommended that defendant's motion for summary judgment be **GRANTED**.

## Procedural History

From August through at least December 2005, Edward Charles Nicholson was a federal pretrial detainee housed at various state or county/parish institutions in Arkansas and Louisiana. On July 24, 2006, Nicholson filed the instant pro se civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Arkansas against the various institutions, prison officials, and federal agencies who were involved in his detention due to their alleged deliberate indifference to his serious medical needs in violation of the Eighth Amendment and the Due Process Clause.

A portion of Nicholson's complaint focused upon the approximately two month period (from August 18, 2005, to October 24, 2005) that he was confined at the West Carroll Detention

Center ("WCDC"), in Epps, Louisiana. Nicholson alleged that for "a month and a half" while at the WCDC, he did not receive medication for his serious medical conditions: diabetes, hypertension, and allergies. *Id*.; Compl., pg. 2 [doc. # 1]. Nicholson's complaint joined various parties associated with the WCDC, including Warden Harvey Grimmer, the Emerald Correctional Management Services, Inc. ("Emerald"); and Supervising Nurse, Bobbie Wise (incorrectly referred to in the complaint as "Bobbi Wise").

On July 19, 2007, the U.S. District Court for the Eastern District of Arkansas dismissed several defendants including Grimmer and Emerald, but preserved *inter alia* plaintiff's claim against Nurse Wise. (July 19, 2007, Initial Review Order [doc. # 19]). The Arkansas court later determined that it lacked personal jurisdiction over Wise, but "in the interest of justice" severed plaintiff's cause of action against Wise and transferred it to this court where it was lodged on January 23, 2008. (December 18, 2007, Ruling [doc. # 27]).[1] Once here, the undersigned appointed counsel to represent plaintiff. (February 14, 2008, Order [doc. # 29]).

On July 15, 2009, Wise filed the instant motion for summary judgment seeking dismissal of all claims against her on the basis that she was not deliberately indifferent to Nicholson's medical needs. Nicholson filed his opposition on July 29, 2009. [doc. # 49]. The matter is now before the court.

## **Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

[1] The claims against the remaining defendants remained in the Eastern District of Arkansas.

<mark>2</mark>

matter of law. F.R.C.P. Rule 56(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the facts are to be reviewed with all inferences drawn in favor of the non-moving party, factual controversies are resolved in favor of the non-movant only when there is an actual controversy. That is, when both parties have submitted evidence of contradictory facts. *McCallum Highlands, Limited v. Washington Capital DUS, Inc.*, 66 F.3d 89 (5th Cir. 1995).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Ultimately, however, the court must resolve all doubts against the moving party and draw any reasonable inferences raised by the evidence in favor of the non-moving party. *See Gowesky v. Singing*

*River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 1999).

## Background[2]

Nicholson was housed at the WCDC in Epps, Louisiana, for a total of two months and six days from August 18, 2005, to October 24, 2005. During this period, Bobbie Wise served as the nursing supervisor at the WCDC. (Affidavit of Bobbie Wise; Def. Exh. 1).

Plaintiff's verified medical records from the WCDC show that he was transferred from the Pulaski County Regional Detention Facility in Little Rock, Arkansas, to the WCDC on August 18, 2005, and that there were no current medical problems or medications listed in his U.S. Department of Justice or Pulaski County medical information transfer paperwork. (*See* Medical Records, pgs. 1, 4; Def. Exh. 2).

Once plaintiff informed the medical staff at the WCDC that he needed certain prescription medication, the nursing staff, including Bobbie Wise, requested that the WCDC physician, Dr. Guinigundo, treat and diagnose Mr. Nicholson. (Wise Affidavit). After Dr. Guinigundo treated Nicholson and recommended various medications, the WCDC nursing staff contacted the U. S. Marshal Service ("USMS") for pre-approval of the medications, specifically, Tarka, Glipizide and Allegra D, which they then obtained. (*See* Wise Affidavit).[3]

The evidence reflects that as early as August 19, 2005, Wise sought and obtained pre-approval for Glipizide and Bactrim as recommended by Dr. Guinigundo to treat Nicholson's

---

[2] The following section principally tracks the facts contained in defendant's Statement of Undisputed Material Facts attached to her motion for summary judgment. Plaintiff does not "specifically traverse" the facts set forth in defendant's Statement. *See* Pl. Statement [doc. # 49]. Accordingly, they are deemed admitted. LR 56.2. In any event, the facts remain uncontroverted.

[3] Tarka is used to treat hypertension or high blood pressure; Glipizide is used to treat diabetes; Allegra D is used to treat allergy symptoms. *Id*.

4

diabetes and a urinary tract infection. (Wise Affidavit; Med. Records, pg. 16, Def. Exh. 2). The WCDC nursing staff subsequently sought and obtained pre-approval to refill plaintiff's Glipizide medication on September 21, and October 17, 2005. (Med. Records, pgs. 14, 19). On September 29, 2005, Nurse Wise notified Dr. Guinigundo that plaintiff's blood pressure was elevated, and then obtained USMS approval for Tarka, per Guinigundo's instructions (Med. Records, pg. 13, 10). On October 10, 2005, the WCDC nursing staff sought and obtained USMS pre-approval for Allegra-D as recommended by Dr. Guinigundo. (Med. Records, pg. 8, 12, 18).[4]

During the relevant period, the WCDC offered a diabetic diet for prisoners. (Affidavit of Soundra Fontenot; Def. Exh. 3).[5] However, it is the inmate's responsibility at meal time to state his name and inform the culinary staff that he should be receiving the diabetic diet. *Id*. The culinary staff then confirms that the inmate has been identified as requiring a special diabetic diet. *Id*.

There is no indication in Nicholson's records that he was placed on a diabetic diet. However, in her capacity as nursing supervisor, Bobbie Wise, the only defendant herein, did not have the responsibility or duty to determine the dietary needs of prisoners, nor did she have any control or responsibility over what food items were served to prisoners at meal times. (Wise Affidavit).

On October 24, 2005, when Nicholson transferred out of the WCDC, his transit form indicated that he suffered from diabetes, allergies, and hypertension and that his medication

---

[4] Although Nicholson requested allergy medication and high blood pressure pills as early as August 27, 2005, Nurse Sanders noted that he had no sinus drainage or cough and that his lungs were clear. *Id*., pg. 20.

[5] Fontenot is the culinary supervisor for the WCDC. *Id*.

consisted of Allegra D, Tarka, and Glipizide. (Med. Records, pg. 2).

## Analysis

As an initial matter, the undersigned observes that because Nicholson is no longer housed at the WCDC, he is not entitled to injunctive relief. *See, Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)(citations omitted). Accordingly, the focus of this ruling is Nicholson's claim for damages against Bobbie Wise.

A pretrial detainee's constitutional right to medical care (as enforced against a state actor) arises from the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). When a pretrial detainee initiates a claim for the denial of medical care which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied. *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996)); *Nerren v. Livingston Police Dept.,* 86 F. 3d 469 (5th Cir. 1996). This is the same standard applied to claims brought by convicted prisoners under the Eighth Amendment. "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001).

To establish liability, a detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). More specifically, deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: (1) the official was

aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Prisoners are not entitled to the "best medical care money can buy." *See Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992); *Woodall v. Foti,* 648 F.2d 268 (5th Cir. 1981). In *Woodall,* the Fifth Circuit stated that the test in balancing the needs of the prisoner versus the needs of the detention center is one of medical necessity, not of desirability. *Woodall, supra*. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.

The evidence currently before the court fails to demonstrate that Wise actually inferred a substantial risk of harm due to Nicholson's alleged inadequate medical treatment (including his alleged lack of a diabetic diet), or that she subjectively intended him to suffer harm. The uncontroverted evidence confirms that Wise and the WCDC nursing staff promptly secured approval for the medications from the USMS, as soon as they were prescribed by the facility's

7

physician. In response to defendant's motion for summary judgment, plaintiff has not come forward with any evidence to support a finding that Wise was aware that Nicholson was not receiving his medication after it had been prescribed and approved. Indeed, there is no evidence to suggest that Nicholson, in fact, did not receive the medications once they were prescribed, or that if he did not receive them, that Nurse Wise was aware of this omission and the resulting effect on Nicholson's health.[6] To the contrary, the medical record reflects that the medical staff twice obtained approval to refill Nicholson's diabetes medication – a redundant exercise if they were not giving him the medication to begin with. *See, Rhyne v. Henderson County*, 973 F.2d 386, 393 (5th Cir.1992) (defendants' efforts indicated concern, not apathy)

Insofar as plaintiff complains that he did not receive a diabetic diet at the WCDC, the uncontroverted evidence establishes that Wise did not have the responsibility or duty to determine inmates' dietary needs. Moreover, there is no evidence that the WCDC physician even prescribed a diabetic diet for Nicholson.

Finally, to the extent that plaintiff seeks to impose liability upon Nurse Wise in her supervisory capacity under § 1983, he must establish (1) her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted). Here, however, plaintiff has not adduced any evidence that Wise was personally involved in any alleged constitutional violation. *See* discussion, *supra*.

In the absence of the supervisors' personal participation in the events at issue, plaintiff

---

[6] "[A]n official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528 (5th Cir. 1999).

8

must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa, supra*. Deliberate indifference entails a "conscious choice to endanger constitutional rights." *Id*. (citation and internal quotation marks omitted). Deliberate indifference normally requires more than a single instance of lack of training or supervision. *Id*. Plaintiff has not made the requisite showing here.

## Conclusion

For the above-stated reasons, the undersigned finds that there is no genuine issue as to any material fact and that defendant Bobbie Wise is entitled to judgment as a matter of law, dismissing plaintiff's claims against her. Fed.R.Civ.P. 56. Accordingly,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 47] filed by defendant Bobbie Wise be GRANTED, and that judgment be entered in favor of defendant Bobbie Wise, dismissing with prejudice plaintiff's claims against her. Fed.R.Civ.P. 56.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 31st day of July 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE